ATTACHMENTS

~~110~~

10 of 31

## I. INTRODUCTION

1. This is an action for damages for violations of civil rights sustained by a citizen of Washington State, against numerous Department of Corrections employees who, through their failure to afford plaintiff his statutory and constitutional rights, have caused the plaintiff to suffer a loss of hiss civil rights, severe physical injury, permanent scarring to his body, severe emotional distress, severe psychological deteriation and severe mental anguish.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

2. Plaintiff has exhausted all possible grievances and pursued all administrative remedies available to him.

## III. PARTIES

3. Plaintiff Joe J.W. Roberts, Jr., was at all times relevant hereto a resident of the correctional Facilities Walla Walla, and Monroe, Washington and is mentally ill and had a recognized mental disability within the meaning of the Americans with Disabilities and Rehabilitation Act(s). Plaintiff is presently incarcerated by the Washington State Department of Corrections.

4. Defendant Tim Thrasher is a Mission Housing Administrator at the Washington Department of Corrections on 2017-2020;

5. Defendant Scott Russell was and at all times relevant was either the Superintendent or the Deputy Director of Prison Command & for the Washington Department of Corrections with supervisory responsibility over all the defendants and

the ability to make policy for the Washington Department of Corrections on 2017-2020;

6. Defendant Karie Rainer is a psychologist and is the Director of Mental Health for the Washington Department of Corrections on 2017-2020;

7. Defendant Bruce Gage is the Supervisor or was the Supervisor over all the mental health staff at the Monroe Correctional Complex at all relevant times mentioned herein 2017-2019;

8. Defendant Crystal Contreras is the head supervisor over all the mental health staff at the Washington State Penitentiary at all relevant times mentioned herein on 2017-2020;

9. Defendant Don Holbrook is the Superintendent at the Washington State Penitentiary and is responsible for the well-fare of all the offenders that reside there on 2017-2020;

10. Defendant Jack Warner is the Supervisor/Superintendent at the Monroe Correctional Complex and is responsible for the well-fare of the offenders that reside there 2017-2019;

11. Defendant Lisa Anderson is the Associate Superintendent at the Monroe Correctional Complex and is also responsible for the well-fare of the offenders that reside there on 2017-2019;

12. Defendant Chris Bowman is the Associate Superintendent at the Washington State Penitentiary and is also responsible for the Well-fare of the offenders

that reside there on 2017-2020;

13. Defendant Katrina Suckow was the Custody Unit Supervisor at all relevent times mentioned herein at the Washington State Penitentiary on 2017-2020;

14. Defendant Scott Buttice was the Custody Unit Supervisor at all relevant times mentioned herein at the Washington State Penitentiary on 2017-2020;

15. Defendant Arben Kulhoija was the Custody Unit Supervisor at all relevant times mentioned herein at the Monroe Correctional Complex on 2018-2019;

16. Defendant Todd Saunders was the Classification Counselor at the Monroe Correctional Complex on 2018-2019;

17. Defendant Allison Windows was the legal liaison at the Washington State Penitentiary on 2019-2020;

18. Defendant Susan Hussey was the Nurse at the Washington State Penitentiary on 2017-2020;

19. Defendant Kathy Jackson was the Nurse at the Washington State Penitentiary on 2017-2020;

20. Defendant Lindsay McIntyre was the Psyche Associate at the Monroe Correctional Complex on 2018-2019;

21. Defendant Vilma Khounphixay was a Psyche Associate at the Monroe Correctional Complex on 2018-2019

22. Defendant Valerie Herrington was a Psyche Associate at the Monroe Correctional Complex on 2019;

23. Defendant Hailee Jiminez was a Psyche Associate at the Monroe Correctional Complex on 2017-2018;

24. Defendants Rachael Symons was a Psyche Associates at the Monroe Com Correctional Complex on 2017-2019;

25. Defendant Patricia Zeisler was a Psyche Associate at the Washington State Penitentiary on 2017-2020;

26. Defendant Nicolette Phillips was a Psyche Associate at the Washington State Pententiary on 2017-2020;

? 27. Defendant Lisa Robtoy was a Psyche Associate at the Washington State Penitentiary on 2019-2020;

28. Defendant Joshua Slater was a Psyche Associate at the Washington State Penitentiary on 2019-2020;

29. Defendant Steven Jewitt was the Psychiatriast at the Monroe Correctional Complex on 2017-2019;


30. Defendant Dan Snewasser was the Psychiatrist at the Monroe Correctional Complex; on 2017-2019;

31. Defendant Jane Doe / John Doe 1-5 are Nurses at the Monroe Correctional Complex and acted with deliberate indifference by refusing to stich my arm knowing it required stiches; and C/O's at WSP; on 20.

32. Defendant G. Godvicak, is a nurse at Monroe Correctional Complex; on 2018;

33. Defendant (FNU) Hat, is a Correctional Officer at the Monroe Correctional Complex; on 2018;

34. Each Defendant are employed at Washington Department of Corrections and as described herein this complaint and complained herein this complaint was acting under color of law and within the course of their official and individual capacities.

IV. FACTS

35. Plaintiff Joe J.W. Roberts, Jr., has suffered from an mental illness his entire life since his earliest age of 2 years of age. Plaintiff has been civilly committed to State Hospitals at the earliest age of 10 years at the Metropolitan State Hospital for Adolesants, until he was 16 years old due to his serious mental health needs; at the age of 17, plaintiff was again civilly committed to Metropolitan State Hospital and upon his 18th birthday was than trasfered to the Napa State Hospital until the age

of 19; at age 22, I was again civilly committed until age 23. Plaintiff continued to recieve mental health treatment up until in his incarceration in 2015.

36. From November 2015-October 4th 2016, plaintiff recieved psychiatric treatment at the King County Jail in Seattle, Washington.

37. On October 4th 2016, plaintiff arrived to the Washington Department of Corrections. Between October 4th 2016-August of 2017, plaintiff continued to suffer from his mental illnesses and self-harmed, had suicidal ideations. As a result of plaintiff's mental disorders like: PTSD, Panic Attacks, depression, Anxiety, bipolar, paranoid personality disorder and other mental disorders. Plaintiff was refered to the Care Review Committee, or otherwise known as, the ("CRC"), due to his serious mental health needs and gave plaintiff a PULHES, S-Code of 3 indicating substantial impairment and the need for significant mental health treatment. As a result of plaintiff's serious mental health needs he was approved for ~~treatment~~ Residential Treatment Unit (RTU), for mental health treatment.

38. ~~[illegible]~~ Plaintff was diagnosed in a mental health update (10/4/2017) with the mental illnesses of Bipolar Disorder I, ~~[illegible]~~ Most recent episode manic, moderate, post Traumatic Stress Disorder, Generalized Anxiety Disorder, and Antisocial Personality Disorder.

39. Plaintiff was diagnosed in a mental health update (3/21/2018) with the mental illnesses of paranoid Personality Disorder, Bipolar Disorder I, most Recent episode manic, moderate, Post Traumatic Stress Disorder, and AntiSocial Personality Disorder NOS

40. Plaintiff was diagnosed by psychiatrist providers (4/20/2016) with the mental illnesses of bipolar Disorder NOS, Delusional Disorder, Other Non organic Psychoses NOS, Anxiety State NOS, and Personality Disorder NOS.

41. Approximately on August of 2017, plaintiff was transfered from Residential Treatment ~~Unit~~ Unit at Washington State Penitentiary to the Intensive Management Unit/Solitary Confinement for custody and classification reasons, not for clinical mental health reasons. Plaintiff had been placed on RTU for mental health treatment and was deprived to continue his RTU level of care by defendants Rainer, Thrasher, Russell, Zeisler, Phillips, Suckow, Bowman, Buttice, Holbrook and Contreras; because of a finding of guilty of a WAC 506, they punished me and acted with callous indifference by depriving me of the RTU level of mental health treatment and illegally housed me in the IMU/Solitary Confinement;

42. Approximately on August of 2017, plaintiff refused IMU/Solitary Confinement and demanded to recieve mental health treatment. Instead defendants Rainer, Suckow, Zeisler, Phillips, and Contreras falsified plaintiff's mental health and custody records to satisfy the requirements so plaintiff could illegally be housed in IMU/Solitary Confinement. This caused plaintiff to deteriate psychologically, self-harm, experience suicide ideations, and exacerbated plaintiff serious mental illnesses. On August-November 2017, plaintiff smeared his own feces.

43. Approximately August-September 2017, plaintiff's primary therapist Jamie Davis stated in essence to plaintiff, "it is clear you are suffering in the IMU/Solitary Confinement and it is exacerbating your mental illnesses and I dont care what they say. You need to be placed back in in the RTU."

As a result of Davis doing her job, plaintiff was sent back to RTU, but was kept in Solitary Confinement pending transfer to Monroe Correctional Complex to Special Offender Unit (SOU), to do a program in the Intensive Treatment Unit (mental health treatment), (Solitary Confinment).

44. Approximately on June-November 2017, defendants Tim Thrasher, Scott Russell, Rainer, Contreras, Holbrook, Bowman, Suckow, Buttice, Hussey, Jackson, Zeisler, Phillips, forced mentally ill offenders, including plaintiff, to urinate and defecate inside a hole in the ground in the suicide observation cell. The hole was covered by metal bars that had someones dried feces on the bars and plaintiff had use his bare hands to push his own feces in between the bars to go down the hole. The conditions were very unsanitary, inhumane. This made me very nauseous, and depressed. Plaintiff was forced to eat food with feces still on his hands. The suicide observation cells do not have tiolets or sinks. Plaintiff was unable to wash his hands or drink water. Plaintiff complained about these conditions. These conditions caused plaintiff psychologically deteriate and self harm, which I was sent to the St. Mary's Medical Center (emergency hospital), in Walla Walla, Washington for my injuries; my hand split open to the cartilage and the next day my right hand turned blue.

45. On approximately August-November 2017, plaintiff was suffering from the effects of solitary confinement because the deferendants Thrasher, Russell, Rainer, Contreras, Phillips, Holbrook, Bowman, Buttice, Suckow, Zeisler, housed me in IMU/Solitary Confinement illegally, which caused plaintiff to commit self-harm and suffer severe mental anguish, As a result, plaintiff was placed into restraints without a mattress by John Doe's (3-4). John Doe's (3-4) acted with deliberate indifference and violated

Doc policy Use of Multiple Restraints 420250 or 420.255, when ignoring plaintiff and notified John Doe's (3-4), that plaintiff has degenerative disk and bone disease and requested a mattress to lay on. Plaintiff layed into restraints, Multiple Restraint Bed (MRB), approximately for 17-18, hours at a time. This caused plaintiff severe pain in my back to when I was released out of restraints, I was unable to walk or stand up so they brought a wheel chair for me, and aggravated his mental illnesses.

46. Approximately November 2017-April 2018, plaintiff arrived to the Monroe Correctional Complex (MCC), Special Offender Unit (SOU), Intensive Treatment Unit (ITU), because of his serious mental health needs. Plaintiff was suffering from the effects of the IMU/Solitary Confinement, and felt defeated, depressed, paranoid, and hopeless. Plaintiff layed in bed and contempplated suicide. Plaintiff broke a peice of metal off the radio and sharpened it and cut my right arm and leg. Plaintiff was bleeding proffusely. Plaintiff suffered deep scarring to his right arm, which the scars cover 50 percent, on his right leg, shin area there is also deep scarring. Defendant Jane/John Doe (1-2), refused to stich my deep lacerations. This caused my arm to bleed continously and now I have deep big ugly scarring covering my body. Jane/John Doe acted with deliberate indifference.

47. Plaintiff was put into the restraints chair and given an involuntairy psychotropic injection to ease plaintiff's mental anguish/symptoms on 4/2/18.

48. Approximately March-April, 2018, defendants Thrasher, Russell, Rainer, Gage, Warner, Anderson, Jewitt, Sneweisser, McIntyre, Khamphinay, Jiminez, Symons each are in some way personally responsible for falsifying plaintiff's mental health records and

other documents to satisfy the requirements so plaintiff could no longer recieve inpatient mental health treatment and illegally discontinue his RTU level of care, and the above defendants act with callous indifference to plaintiff serious mental health needs just to illegally housed plaintiff in the IMU/Solitary Confinement;

49. Approximately March-April 2018, Defendants Thrasher, Russell, Rainer, Gage, Warner, Anderson, Jewitt, Sneweisser, McIntyre, Khounphixay, Jiminez, Symons each corresponded by email discussing how to discontinue my (RTU) mental health treatment, my involuntary psychotropic medication and it further shows the callous intentions the above defendants took to undermine the requirements So they discontinue my (RTU) mental health treatment, my involuntary psychotropic medication, so they can refuse me the programs and services and illegall house me in the IMU/Solitary confinement, knowing that the solitary confinement exacerbated offenders, including plaintiff's mental illnesses.

50. Approximately on April 16th-23th of 2018, plaintiff notified a Correctional Officer that he was suicidal. As a result plaintiff was moved to the COA at the SOU, and began to self-harm and attempt suicide suicide due to defendants, Thrasher, Russell, Rainer, Gage, Warner, Anderson, Jewitt, Sneweisser, McIntyre, Khounphixay, Jiminez, Symons causing plaintiff to be illegally housed in solitary confinement. On April 20th of 2018, Defendant (FNU) Hat, encouraged plaintiff to kill himself when he saw I was attempting kill my self and when I self-harmed for hours, plaintiff attempted suicide by falling head first from the toilet in an attempt to snap his neck. Plaintiff knocked himself unconsciouss, suffering: head trauma (concussion), and very deep contusion to the top of his head. Defendants Godvicak and (FNU) Hat, consciously deliberately chose to ignore

and deny me medical attention. Defendants Godwicak and (FNU) Hat, also refused to report my suicide attempt to, defendants Rainer, Thrasher, Andersen, Warner.

51. On 04/23/18 - 5/31/18, plaintiff was psychotic, depressed, suicidal, and suffering from the effects of solitary confinement that plaintiff smeared his own feces on the wall cell at the Monroe Correctional Complex, IMU/Solitary Confinement, and attempted suicide which plaintiff has a video showing his swollen face and SGT. Aaron Roos stated Mr. Roberts has bruising to right eye. This suicide attempt went also unreported. Being in solitary confinement caused plaintiff to engage in dangerous self-harm acts and injured himself cause of the solitary confinement exacerbated his mental illnesses and as a result of plaintiff's severe deteriated psychological state he self harmed and, was placed in restraints 6-7 times within a few days. Defendant Rainer Thrashre told, Khounphixay, McIntyre, Jewitt, Sheweisser to callously documented that this was behavioral unrelated to plaintiff's mental illnesses; this was done to keep me in solitary confinement so they could sadistically and callously watch me suffer

52. Approximately on November - December 3rd of 2018, plaintiff still illegally housed in IMU/Solitary Confinement at Washington Corrections Center and was placed on a one on one suicide watch because plaintiff was suffering from the effects of solitary confinement. This caused plaintiff to feel severely depressed and suicidal. Eventually plaintiff was transferred to the Monroe Correctional Complex on 12/03/2018.

53. On 12/04/2018, while in solitary confinement at MCC, plaintiff notified the Defendant John Doe (S) that he felt suicidal

and ~~Defendant McGuire~~ later that day as a result of being in solitary confinement plaintiff was frustrated, depressed and confused, plaintiff banged his face into the concrete floor. When later calming down, Plaintiff notified the booth officer ~~the booth officer~~ and was escorted to the nurses station and nurse Angela Felch documented the swelling of my head and face. I was then put into restraints. A couple days afterwards when plaintiff looked at his face, his face had bruising and it hurt bad. Plaintiff further suffered severe pain, dizziness, loose teeth sensitivity to light and head aches, plaintiff suffered a concussion.

54. Defendant Russell, Rainer, Thrasher, Gage, Contreras, Holbrook, Warner, Anderson, Bowman, Suckow, Buttice, Kullojka, Saunders, Herrington, Jiminez, Symons, Zeisler, Phillips, Robtoy, Slater, Jewitt, and Sneweisser between June 2017-2020, at all relevant times caused plaintiff to be kept illegally in the IMU/Solitary Confinement for long periods of time by, corresponding by email, Multidisciplinary team hearings, FRMT, hearings, BFP hearings, and any other hearings, caused plaintiff to become trapped in Solitary confinement for years at a time causing plaintiff's mental illnesses to become exacerbated to the point where plaintiff attempts suicide, suffer ptsd, bpd, depression, become traumitized, paranoid, self-harm suffering serious injuries and severe mental anguish and act out to the point where plaintiff snaps and get infractions ultimately causing plaintiff to become trapped in the disciplinary process. These defendants watched plaintiff suffer in solitary confinement and deteriate until he became psychotic and despite this they deliberately with callous indifferences would not acknowledge plaintiff's major mental disorders and serious mental illenesses and refused to bring me before the CRC to recieve mental health treatment at RTU level

of care.

55. On approximately 1/1/19-3/15/19, plaintiff was at WCC in Shelton, WA, intensive management unit/solitary confinement, caused plaintiff to have a serious mental break down; plaintiff would cry uncontrollabley and it was painfull on my body because my body would tremble and tense. It made nauseas. Plaintiff made a noose and wanted to commit suicide. A correctional officer noticed the noose and talked me into coming out of my cell.

56. On approximately March 2019, plaintiff was transported to WSP, in Walla Walla, WA, and housed in solitary, Confinement. This caused plaintiff to feel suicidal and depressed.

57. Approximately April 2019, plaintiff was transported to MCC in Monroe, WA, and housed illegalley in Solitary Confinment and stayed there until September 2019, causing plaintiff to suffer from the effects of being isolated from human contact caused plaintiff to smear his feces for 3 weeks and suffered severe mental anguish, psychotic and suffered little sores on his body from smearing his own feces. Defendants McIntyre, Kulleijka, Herrington, and Saunders were made aware by me and they acted with deliberate indifference and ignored me and left me in their. The whole cell was covered in feces. They acted with deliberate indifference. I told thaim that Solitary Confinment is making me psychotic. This happened from April 2019-September 2019.

58. Defendants Slater, Robtoy, Herrington, McIntyre, Khounphixay, would falsify plaintiff health records and documented I'm faking my mental illnesses; I have copies of this, they would act with deliberate indifference and

they would lie and say I am refusing treatment; They would say plaintiff's mental illnesses are not apart of his behaviors; instead plaintiffs mental health providers defendants McIntyre, Khounphixay, Herrington, Slater and Robtoy focused soley on controlling and extinguishing the behaviors they perceived as problematic while entirely ignoring that his behaviours were a manisfestation of his mental illnesses; they purposefully disregarded plaintiffs mental illnesses and descriped him, not as a mentally ill person, but as a behavior problem; The defendants McIntyre, Khounphixay, Herrington, Slater and Robtoy took out of context the behaviors that were "targeted" for change and extinction, thereby attempting to demonize plaintiff. The above defendants did these things through 2018-2020 at all relevant times.

59. Approximately May-2019-January 2020, plaintiff sent multiple letters notifying Defendants Contreras, Russell, Rainer and Warner, of what the defendants Khounphixay, McIntyre, Herrington, Slater and Robtoy were doing as described in paragraphs 35-58. Defendants Contreras, Warner, Russell and Rainer did nothing; and encourged me to keep working with them.

60. Approximately April 2018-August 2019, defendants Khounphixay, McIntyre, Herrington, Saunders and Kulloţka prolonged my (FMRT) for approximately one year and a half. The FMRT would determine if I would be released from IMU/Solitary confinement. Plaintiff had 9 serious infractions pending, which defendants Khounphixay, McIntyre, Herrington, Saunders and Kulloţka concluded the FMRT, that because I have 19 serious infractions pending they would all recommend I remain in solitary confinement, despite dismissing all the infractions except for 1 or 2. Nonetheless defendants Rainer, Thrasher, and Russell each approved that I remain in solitary confinement these defendants acted with callous indifference to me suffering in solitary confinement they are heartless and hate my guts!

61. On approximately September 2019- January 2020, ~~plaintiff~~ as a result of defendants Thrasher, Russell, Rainer, Gage, Contreras, Holbrook, Warner, Anderson, Bowman, Suckow, Buttice, Kulleijka, Saunders, ~~[illegible]~~ McIntyre, Khounplixay, Herrington, Jiminez, Symons, Zeisler, Phillips, Robotey, Slater, Jewitt, and Sneweisser causing plaintiff to be housed illegally for years at a time in IMU/Solitary Confinement ~~[illegible]~~ made him depressed, suicidal, self-harm and psychotic made plaintiff smash his head forcefully hard enough until his forehead split so deep. Defendant Hussey refused to give plaintiff the adequate medical treatment of stiching his head but instead put a band aid to ~~[illegible]~~ cover the deep lacerated gash. Plaintiff suffered a concussion and was in severe pain and was dizzy. Plaintiff was o/c'd and put into restraints. Now plaintiff has a very ugly scar on the center on his fore head now. Michael Denton 898610 an Carlos lopez 384285 were witnesses.

62. On approximately 01/22/20, defendant Jackson harrassed me to the point and the effects of solitary confinement all caused plaintiff to psychologically ~~[illegible]~~ snap punch the wall and slam my head forcefully until I was unconcious. Plaintiff was seen by Dr. Reyes and defendant Jackson argued with me about whether or not I ~~[illegible]~~ needed stiches. Reyes left and Jackson argued with me and was being provocative. Defendant Jackson said you only need a band aid. I became so angry I screamed at her to get Reyes and do her job and provide me with ~~[illegible]~~ adequate medical care. Finally, Reyes said fine we'll stich it. Carlos Lopez ~~[illegible]~~ 384285 and Michael Denton 898610, were witnesses. The injury was so deep you could see the tendon.

63. Approximately October 2019-January 2020, plaintiff's primary mental health therapist defendant Slater told me that due to all the many lawsuits I have

filed he will not talk to me at my cell front at IMU and the HSB. Slater would walk off when I attempted to be reasonable and talk with notifying him that I would waive my right to confidentiality. I filed several medical kites explaining I would waive my right to confidentiality. Defendant Slater would lie and pretend that he never recieved any kites about waiving my rights to confidentiality. I would tell slater that I felt like self harming and was suicidal. I explained the IMU/Solitary Confinement makes me feel this way. Defendant Slater would totally ignore my safety concerns and trick me and say well your going back to the IMU your being manipulative and you have no mental illnesses and you are only a behavioral problem. I told defendant Slater what did I do to have you treat me so wrong? Defendant Slater had knowledge of how I was treated by defendants Khounphixay, McIntyre, Warner, Thrasher, and Rainer; back in 2018-2019, because I explained it. Despite this defendant Slater would act with deliberate indifference to my serious medical needs and put me at a serious risk to harm, and leave me in the IMU/Solitary Confinement. I requested to be accommodated pursuant the ADA and RA act(s). He would deny to accommodate my serious mental health needs and refer me to the ADA coordinator and the CRC so I can recieve RTU level of mental health treatment at SOU. Plaintiff told defendant Contreras/Robtoy all of this as well and complained to her about defendant Slater and asked to be accommodated they ignored me and just like I said about Slater defendants Robtoy and Contreras did the same thing and denied me to be accommodated pursuant the ADA and RA Act(s). Offender Dustin Hetricks 333979 is a witness to this. Although ultimately as a result of all my complaints about Defendants Slater, Robtoy, they taken me off his caseload and assigned me to

do therapy with Mental Health Counselor Jason Krittle and now I am being treated fair, equally, and am reieving better help. and Krittle said You are mentally ill and you clearly need mental health treatment and I will refer you to the CRC to try and get you back into RTU.

64. Approximately January 2020, defendant Slater without assessing me acted with deliberate indifference to my serious mental health needs by having me moved off the mental health tier at WSP-HSB E unit that designed to keep mentally ill inmates safe; to a medical cell in HSB D cell 8. There was medical equipment all over the cell that were sharp. I told Slater this and Slater laughed at me and walked off. As a result of defendants callous indifference I cut myself for 20 minuets. Slater knew I was on suicide watch one on one and put me in a non safety cell, that is clearly not designed to house suicidal prisoners.

65. Defendant Russell enforsed two policies (Legal policy 590-500) and Mail Room policy 450.100 by telling defendant Allison Windows to not allow offenders including plaintiff to recieve legal media (CD's with uploaded legal content privledge attorney client information) From their attorneys, but contrary the prosecutor or courts could send offenders, including plaintiff legal media. Defendants Russell, and Windows enforced the legal policy to deprive plaintiff access to his legal media and courts. Policy 590.500 and 450.100 are biased towards prisoners and plaintiff. When plaintiff notified defendant Windows that I had multiple deadlines, in a Franklin County Superior Court, the Western district of Seattle, Washington in July - December 2019 through January - February 2020, defendant windows retaliated and took away my legal

media/eds so I could not meet my deadlines or access the courts and file my lawsuit. I was denied due process when my legal media was illegally confiscated and was denied to appeal. Instead defendants Russell and Windows enforced both enforced the two policies 590.500 and 450.100. Defendants Russell and Windows committed these acts during September 2019 - January 2020. This caused me to become depressed and engage in self-harm.

66. As a result, defendants Russell, Rainer, Thrasher, Gage, Contreras, Holbrook, Warner, Anderson, Bowman, Suckow, Buttice, Kulojka, Saunders, Herrington, Jiminez, Symons, Zeisler, Phillips, Robtoy, Slater, Jewitt, Snewisser, Khounphixay, and McIntyre illegally housing prisoners, including plaintiff in Solitary Confinement for years at a time despite knowing plaintiff suffered from major mental illnesses which exacerbated plaintiffs mental illnesses causing plaintiff to self-mutilate for years, plaintiff stabbed himself with pens, gouged his arms with his finger nails, banging his head, cutting his arms, legs feet about half of my body is permanently scarred for life, plaintiff has been diagnosed with new disorders that he has never been diagnosed with. I have suffered greatly. The defendants above should have known or did know but they acted with callous indifference and acted with deliberate indifference and watched plaintiff suffer by keeping me in solitary confinement! They denied me adequate mental health treatment refused me to be referred to the CRC to be housed in SOU a mental health treatment center at Monroe, WA. This caused plaintiff to act out like a child which I received many, many infractions which caused me to become trapped in the disciplinary process. Dr. Brendan Scholtz conducted a psychological evaluation explaining in detail how I was mistreated and suffering in IMU with a mental illness.

V. FIRST CLAIM FOR RELIEF

(42 USC §1983 - Deliberate Indifference)

67. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 66 with the same force and effect as if such paragraphs were seperately realleged in this First Claim for relief.

68. At all times material hereto, defendants, jointly and severally, had a duty under the Eighth Amendment of the U.S. Constitution not to be deliberately indifferent to the known serious medical needs of detainees at the DOC. This duty arose from the individual defendants' capacity as agents or employees of the DOC. Because defendants had a non-delegable duty to provide medical services to detainees of the DOC, DOC and its agents and employees acted under color of law while providing these services.

69. Due to the fact that the Washington State Department of Corrections only has one mental health treatment facility at MCC Monroe Corrections, mentally ill inmates such as plaintiff are being housed illegally in Administrative Segregation/Intensive Management Units ~~on~~ at Washington State Penitentiary and Monroe Correctional Complex.

70. Defendants failed to provide adequate mental health treatment and medical care for plaintiff and properly document his suicide attempts, injuries, and mental health and defendants refused to transfer plaintiff to the special offender unit per facility plan. The danger of self-harm was identified by the mental health providers. Despite defendants' knowledge of this risk, each of the individual defendants intentionally, or by the exercise of deliberate indifference, failed or refused to provide Roberts with the proper medical attention and care known to be necessary under the circumstances.

71. As a direct and proximate result of the actions and omissions described in this complaint, plaintiff suffered loss of his liberty, aggravation of his pre-existing mental health conditions and has caused new ones, he has been deprived of the freedom that are enjoyed by other inmates. Three years spent in solitary confinement has caused plaintiff to deteriate mentally. Subsequently, plaintiff has been diagnosed with PTSD, Borderline personality Disorder, Generalized Anxiety Disorder, Antisocial Personality Disorder, Bipolar 1 Disorder, Delusional Disorder, Other Non Organic Psychoses, Severe Depression, all to his damage in an amount to be ascertained according to proof at trial. Defendants subjected plaintiff to such deprivation of liberty by malice and a reckless and conscious disregard so his rights for which an award of punitive damages is warranted.

SECOND CLAIM FOR RELIEF

(First Amendment Violation of Access to the Courts Deprivation)

72. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 73 with the same force and effect as if such paragraphs were seperately realleged in this Second Claim for Relief.

73. Defendants' above-mentioned unlawful conduct caused plaintiff harm, because of his complaints about the manner in which he was denied access to the courts in violation of the first Amendment. Defendants retaliated against plaintiff for excersing his First Amendment Constitutional Rights to access the courts by confiscating his 5 legal CDs.

74. As a direct, proximate and foreseeable result of defendants' retaliation, Roberts suffered

the injuries described in this complaint, including bodily injuries and resulting pain and suffering, mental disorder, mental anguish, loss of ability to enjoy life, expenses of medical care and treatment, and other losses including the aggravation of pre-existing conditions. These injuries and losses are permanent and continuing and Roberts will suffer such losses in the future.

75. Defendants' unlawful actions were deliberate, malicious and in conscious disregard of plaintiff's constitutional rights entitled him to punitive damages.

THIRD CLAIM FOR RELIEF

42 U.S.C. § 1983 - Eighth Amendment - Cruel and Unusual Punishment

76. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 74 with the same force and effect as if such paragraphs were seperately realleged in this Third Claim for Relief.

77. The Eighth Amendment protects inmates against infliction of "cruel and unusual punishment."

78. Defendants violated the Eighth Amendment by failing to protect plaintiff's health, isolating him, failing to treat his mental health, mocking and ridiculing him and allowing him to be subjected to the harm above. The defendants conduct was deliberately indifferent to plaintiff's physical and mental health amounting to cruel and unusual punishment. The defendants have deprived plaintiff his right to be free from cruel and unusual punishment of the laws secured by the Eighth Amendment to the

United ~~Stated~~ States Constitution, by not being protected of dangerous situation and suffering from injuries, defendants acted with deliberate indifference regarding plaintiff's rights.

79. As a proximate result of defendants' discriminatory actions against plaintiff, as alleged above, plaintiff has been emotionally harmed in that plaintiff has suffered humiliation, mental anguish, anxiety, mortification, loss of good health and emotional and physical distress, and has been injured in mind and body in an amount according to proof at trial.

80. The actions of the individual defendants, as described in this complaint, were deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff. As a result of said intentional conduct, plaintiff is entitled to punitive damages against the individual defendants in an amount sufficient to punish them and to deter others from like conduct.

FOURTH CLAIM FOR RELIEF

(Disability Discrimination and Failure to Accommodate - ADA 42 U.S.C. § 12131 and Rehabilitation Act of 1973)

81. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 79 with the same force and effect as if such paragraphs were separetly realleged in this Fourth Claim for Relief.

82. Title II ADA provides that "[n]o qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12131.

83. The prisons comprising of Washington Department of Corrections have been recipients of federal funds are thus covered by § 504's mandate, which requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, program activities, and services, and reasonably ~~modifying~~ modify such facilities, services and programs, to accomplish this purpose.

84. Washington State prisons are public entities within the meaning of Title II of the ADA and provide programs, services, or activities to the general public. Title II of the ADA has essentially the same mandate as section 504.

85. At all times relevant to this action, Roberts was a qualified individual within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Washington DOC as well as the prohibitions of discrimination. Specifically, Roberts suffered from several mental impairments that "substantially limits one or more major life activities," including but limited to "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102.

86. Under the ADA, the Washington DOC is required to ensure that develop-mentally disabled prisoners are properly identified in order to provide reasonable accommodations to those prisoners. Therefore, under the ADA, a tracking

system is necessary to ensure that these disabled prisoners are properly identified. Washington DOC has no tracking or other system to ensure that these developmentally disabled prisoners are properly identified and accommodated.

87. The Defendants knew, or should have known, that Roberts suffered from mental illness.

88. The Defendants was deliberatly indifferent in failing to provide Roberts with reasonable accommodations and other services related to his disabilities, and denied him the rights and benifits accorded to other inmates, soley by reason of his disabilities in violation of the ADA and Rehabilitation ACT.

89. Not only did defendants deny Roberts mental health treatment, they punished him and exacerbated his condition by isolating him and keeping him in solitary confinment for years at a time with no plan for his treatment other than punishment.

90. The ADA and Rehabilitation Act require that Prison staff try to counsel developmentally disabled prisoners rather that subjecting them to the disciplinary process when they break prison rules that they do not understand.

91. Plaintiff made defendants aware of his need for a reasonable accommodation

by repeatedly communicating to defendants regarding his medical condition.

92. Plaintiff was denied proper medical care and mental health care during a crisis. The Defendants neglected to provide him medical treatment or monitoring during his suicidal attempts. This incident caused plaintiff to experiance significant physical harm and great emotional distress.

93. Defendants failed to ~~train and supervise~~ enforce appropriate policies and procedures to ensure the provision of necessary accommodations, ~~modification~~ modifications, and/or services to inmates with developmental disabilities.

94. Defendants failed to train and supervise the prison personnel to provide necessary accommodations, modification, services, and or/ physical access to inmates with developmental disabilities.

95. Defendants could have easily accommodated plaintiff's requests.

96. As a proximate result of defendants' discriminatory actions against plaintiff, as alleged above, plaintiff has been emotionally harmed in that plaintiff has suffered humiliation, mental anguish, anxiety, mortification, loss of good health and emotionally and physical distress, and has been injured in mind and body in an amount according to proof at trial.

PRAYER

WHEREFORE, plaintiff prays for the following relief against defendants:

A. For permanent injuction to be issued against the Washington State Department of Corrections to immediately be restrained from continuing to house plaintiff in administrative Segregation, Keep lock, dead lock, Secure housing Units, punitive segregation, Intensive Managment Unit (IMU), and Solitary Confinement;

B. For plaintiff to be released from the Administrative Segregation, Solitary Confinement, Intensive Management Units in the Washington Department of Corrections;

C. For permanent injection to be issued against the Washington State Department of Corrections, Washington State Penitentiary and the Monroe Correctional Complex be immediately ordered to restrain from continuing to force inmates on the iron metal restraint tables naked and that it be ordered that the defendants must immediately stop using these outdated restraint tables and must immediately upgrade to the modern restraint beds The defendants be ordered to no longer take the mattress off any restraint bed when placing an inmate on the restraint bed;

D. For permanent injuction to be issued against the Washington State Department of Corrections to immediately restrain from housing all mentally ill offenders in the Secure Housing Units, in DOC Administrative Segregation IMU'S that are diagnosed with SHU Syndrome, PTSD, Schizophrenia, Personality Disorders, Bipolar Disorders, Tourette's Syndrome, attention Deficient/Hyperactivity Disorder, Major Depression, OCD, panic Disorder, Anxiety Disorders, Borderline Personality Disorder, mentally ill and chemically addicted mental illness with substance abuse, eating disorders or any mental illness that will cause them to suffer from the effects of long-term

isolation and solitary confinement;

- E. For it to be ordered that any and all inmates housed in administrative segregation, IMU's suffering from ~~pro~~ a serious mental illness confined in SHU's, Administrative Segregation or IMU's can only be housed in solitary confinement/ IMU's or Administrative Segregation no longer than 60 days and then they must be transfered before the 60 day deadline to a mental health treatment facility;
- F. For general and special compensentory damages for being illegally housed in solitary confinement for years while suffering from a serious mental illness and suffering severe mental anguish, serious injuries from self-harm, great emotional and pain and suffering and psychological injury for plaintiff against defendants in the amount of $8,000,000.00;
- G. For punitive damages for the evil intent and callous indifference for plaintiff against the individually named defendants in the amount of $8,000,000.00;
- H. For jury trial on all issues triable by jury;
- I. For costs of suit incurred herein; and
- J. For such other and further relief as the Court may deem just.

Dated this 28th day of February 2020

Respectfully submitted by:

Joe J.W. Roberts Jr.

DOC # 394089