UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOE JW ROBERTS, JR,

                Plaintiff,

    v.

TIM THRASHER, et al.,

                Defendants.

CASE NO. 2:20-cv-00376-RSM-BAT

**REPORT AND RECOMMENDATION**

Plaintiff, Joe JW Roberts, Jr., proceeds *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Dkt. 1. Plaintiff is a state prisoner currently housed at Stafford Creek Corrections Center (SCCC). This matter comes before the Court on plaintiff's motion entitled "motion for injunction that defendants remove Joe Roberts #394089, immediately from solitary confinement to a mental health treatment facility at RTU/SOU/Monroe Correctional Complex[.]" Dkt. 27.

By order dated September 3, 2020, the Hon. Ricardo S. Martinez issued an order construing plaintiff's motion as a request for a temporary restraining order (TRO) and setting a briefing schedule. Dkts. 29, 32. The order directed defendants to file notices of intent to respond to the motion by noon on September 7, 2020, and to file their response by noon on September 8, 2020. Defendants have now filed their notice of intent to respond and their response in accordance with the order. Dkts. 34, 35. Having carefully considered the motion and the balance of the record, the Court recommends the motion (Dkt. 27) be denied without prejudice.

//

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Plaintiff's complaint is one of several complaints pending in this Court raising allegations against various Department of Corrections (DOC) employees primarily over the manner in which plaintiff's mental health problems have been treated while in DOC custody as well as his placement for extended periods in solitary confinement. *See* Dkt. 24. Plaintiff's complaint names numerous health care, custody and classification, legal, and supervisory staff at Monroe Correctional Complex (MCC) and Washington State Penitentiary (WSP) (facilities where he was previously housed), as well as DOC Housing Coordinator Director, Tim Thrasher, DOC Director of Mental Health, Karie Rainer, and DOC Prisons Command Director, Scott Russell. Dkt. 21. On September 2, 2020, the Hon. Ricardo S. Martinez issued an order adopting the undersigned's Report and Recommendation, dismissing some of plaintiff's claims as duplicative of the claims raised in his other pending actions, and directing service of the remaining claims in the complaint. Dkt. 28.

In the instant motion, initially filed on August 31, 2020, plaintiff alleges he was approved by defendant Rainer to receive mental health treatment at Residential Treatment Unit (RTU) level of care. Dkt. 27. Plaintiff claims he was approved by the Care Review Committee (CRC) on July 14, 2020, to be housed at the Special Offender Unit at the Monroe Correctional Complex's Residential Treatment Unit. *Id.* Plaintiff states that defendant Rainier invited him to sign a contract on May 19, 2020, whereby he would be placed in RTU if he completed 60 days of treatment in an IMU setting. *Id.* Plaintiff claims he fulfilled his obligation under the contract and that defendant Rainer approved him for placement in the RTU on July 14, 2020, but he has still not been transferred. *Id.*

REPORT AND RECOMMENDATION - 2

Plaintiff asserts that being in administrative segregation is depriving him of the medically required mental health treatment he is approved to receive, is exacerbating his mental illness and putting him at risk of imminent harm and possibly irreparable harm. *Id.* He states that he has, at some point in the past, undergone multiple surgeries related to his self-harming. *Id.* He states he is extremely depressed and has been involuntarily housed on the mental health crisis unit due to his psychological deterioration. *Id.* He states he "always" has ideations to swallow things to hurt myself. *Id.*

Plaintiff states he has been in solitary confinement for approximately 1092 days and is allowed out of his cell for 5 hours per week, is kept in solitary confinement 168 hours a week, and is allowed outside two times per week. *Id.* He claims these conditions exacerbate his mental illness, that he has suffered bleeding ulcers from stress, and he is not receiving adequate mental health treatment. *Id.* As relief, plaintiff requests "an injunction against defendants Rainier and Thrasher" and that it be immediately ordered that he be transported to the RTU at the Special Offenders Unit in Monroe Correctional Complex and that he receive the required and approved mental health treatment that was approved on July 14, 2020. *Id.*

Defendants oppose plaintiff's motion. Dkt. 34, 35. Defendants argue plaintiff fails to meet the standard for a temporary restraining order or preliminary injunction. *Id.* Defendants further present evidence that they are in fact in the process of transferring plaintiff to the RTU at the Special Offenders Unit in Monroe Correctional Complex and argue that injunctive relief is, therefore, not necessary. *Id.*

**DISCUSSION**

The basic function of preliminary injunctive relief is to preserve the status quo ante litem pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Comm'n v.*

*National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). The standards for issuing temporary restraining orders are "substantially identical" to the standards for issuing preliminary injunctions. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Prospective relief here is governed by the Prison Litigation Reform Act (PLRA) which provides:

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A); *see Gomez v. Vernon,* 255 F.3d 1118, 1129 (9th Cir. 2001).

Preliminary relief is granted sparingly, only in clear cases. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). Internal security and safety of jails is a matter that is typically left to the jail administrators, allowing an even more deferential standard. *See Lewis v. Casey*, 518 U.S. 343, 361 (1996); *Turner v. Safley,* 482 U.S. 78, 85 (1987). State prison administration is a "task that has been committed to the responsibility of [executive and legislative] branches and separation of powers concerns counsels a policy of judicial restraint. Where a state penal system is involved federal courts have ... additional reason to accord deference to the appropriate prison authorities." *Id.*, 482 U.S. at 85.

Parties seeking injunctive relief must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has set forth a "serious questions" variation of this standard, under which "a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the

REPORT AND RECOMMENDATION - 4

balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

Preliminary injunctive relief is "'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez*, 680 F.3d at 1072 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 376.  Moreover, plaintiff must show more than a mere "possibility" of irreparable harm, but instead must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id*. at 375 (emphasis and citations omitted). To fulfill the "irreparable harm" requirement, the moving party "must do more than merely allege imminent harm," but "must demonstrate immediate threatened injury." *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

In a civil rights case, injunctions must be granted sparingly and only in a clear and plain case. When a plaintiff seeks to enjoin the activity of a government agency, his case must contend with "the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378, 96 S.Ct. 598 (1976) (citations omitted). This holding applies even more strongly in cases involving the administration of state prisons. *Turner v. Safley*, 482 U.S. 78, 85, 107 S.Ct. 2254 (1987).

Here, plaintiff offers no evidence or argument in support of his motion to demonstrate a likelihood of success on the merits in the underlying action. Plaintiff's complaint has just been served and the Court cannot conclude at this point based solely on the allegations of his complaint and this motion that he is likely to succeed on the merits or even that there is a serious question going to the merits.

REPORT AND RECOMMENDATION - 5

Plaintiff has also not alleged sufficient facts to demonstrate the likelihood of irreparable injury absent the requested relief. Plaintiff must demonstrate real and immediate threat of future injury and past injury is largely irrelevant. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The Eighth Amendment protects against future harm and supports an injunction if an inmate proves the conditions in the prison are unsafe and life threatening. *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993).

Plaintiff states generally that his placement in solitary confinement for an extend period (approximately 1092 days) has worsened his depression and mental health symptoms and that he has a history of self-harming behavior. But plaintiff offers insufficient evidence from which this Court may adequately determine whether he faces real and immediate harm. Plaintiff's assertions regarding the worsening of his mental health symptoms and concerns about self-harm are largely conclusory and he fails to allege specific facts either in his complaint or in this motion that the conditions of confinement at his current facility, SCCC, are inadequate to keep him safe or place him at risk of real and immediate harm.

Plaintiff clearly believes the mental health treatment at his current facility is generally inadequate but offers no specific facts as to how the treatment is inadequate or places him at risk of immediate harm. Plaintiff does not allege that he has expressed concerns about self-harm to the medical staff at SCCC and that they have not properly responded or that there are inadequate measures in place to protect him or address his symptoms if he does experience a mental health crisis or attempts to self-harm. In fact, plaintiff himself notes that he has been placed in the mental health crisis unit at SCCC but does not provide any facts to indicate that the conditions there are inadequate to maintain his safety. The Court notes that while plaintiff makes numerous

specific assertions in his complaint regarding inadequate mental health treatment and deliberate indifference to his mental health needs by staff while he was housed at MCC and WSP, aside from the fact that he remains in solitary confinement at SCCC, he makes no such specific assertions regarding the safety of his conditions or mental health treatment at SCCC. Accordingly, plaintiff has not alleged sufficient facts at this time to demonstrate a likelihood of irreparable injury absent the requested relief.

Moreover, defendants present evidence that plaintiff's request for transfer to RTU is not being ignored but is, in fact, being processed. Dkts. 34, 35. Specifically, defendants present evidence that a Custody Facility Plan was initiated for plaintiff after he completed a contract with mental health. *Id.* The contract set out that if plaintiff maintained positive behavior for a period of time in IMU, the Mental Health Care Review Committee would recommend his transfer to the RTU at Monroe Correctional Complex – Special Offender Unit. *Id.* Defendants indicate that plaintiff met the positive behavior requirement under the Mental Health contract in July 2020, but that within days he received serious infractions. *Id.* When infractions are received while a Custody Facility Plain is in progress, defendants indicate, the infractions must be heard before the Plan is finalized. *Id.* Defendants indicate that the infractions were resolved in August and the Plan was initiated again. *Id.* Defendants indicate the Plan has been going through the recommendation/approval steps and plaintiff's transfer was approved on September 3, 2020 by the "Max Committee." *Id.* Defendants indicate that plaintiff will be transferred to RTU "as soon as practicable" but that first a bed must be secured, and transportation coordinated. *Id.*

Thus, it appears plaintiff will receive the relief he is requesting through the DOC administrative process without intervention by the Court. *See Turner*, 482 U.S. at 85 (Noting that "separation of powers concerns counsels a policy of judicial restraint [with respect to State

REPORT AND RECOMMENDATION - 7

prison administration]. Where a state penal system is involved federal courts have ... additional reason to accord deference to the appropriate prison authorities."). The fact that the transfer process is not moving as quickly as plaintiff would like is not an adequate basis, without more, for granting injunctive relief.

Accordingly, as plaintiff has failed to meet his burden on this motion, the Court recommends that plaintiff's motion for temporary restraining order (Dkt. 27) be denied without prejudice.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **September 24, 2020.** The Clerk should note the matter for **September 25, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses **shall not exceed five (5) pages**. The failure to timely object may affect the right to appeal.

DATED this 10th day of September, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 8