UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOE JW ROBERTS, JR,

                  Plaintiff,

    v.

TIM THRASHER, et al.,

                  Defendants.

CASE NO. 2:20-cv-00376-RSM-BAT

**REPORT AND RECOMMENDATION**

Plaintiff, Joe JW Roberts, Jr., proceeds *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Dkt. 1. This matter comes before the Court on plaintiff's motion entitled "motion for temporary restraining order or injunction order." Dkt. 23. In his motion, plaintiff alleges he is being denied access to the law library and his legal materials at Washington State Penitentiary (WSP), and this is preventing him from prosecuting his case. *Id.* Shortly after filing this motion, plaintiff was transferred from WSP to Stafford Creek Corrections Center (SCCC) where he is currently confined. *See* Dkt. 20.

Having carefully considered the motion and the balance of the record, the Court recommends the motion (Dkt. 23) be denied without prejudice.

## BACKGROUND

Plaintiff's complaint is one of several complaints pending in this Court raising allegations against various Department of Corrections (DOC) employees primarily over the manner in which plaintiff's mental health problems have been treated while in DOC custody as well as his

REPORT AND RECOMMENDATION - 1

placement for extended periods in solitary confinement. *See* Dkt. 24. Plaintiff's complaint names numerous health care, custody and classification, legal, and supervisory staff at Monroe Correctional Complex (MCC) and Washington State Penitentiary (WSP) (facilities where he was previously housed), as well as DOC Housing Coordinator Director, Tim Thrasher, DOC Director of Mental Health, Karie Rainer, and DOC Prisons Command Director, Scott Russell. Dkt. 21. On September 2, 2020, the Hon. Ricardo S. Martinez issued an order adopting the undersigned's Report and Recommendation, dismissing some of plaintiff's claims as duplicative of the claims raised in his other pending actions, and directing service of the remaining claims in the complaint. Dkt. 28. On September 29, 2020, plaintiff filed a motion to amend his complaint to include additional claims and defendants. Dkt. 43.

In the instant motion, initially filed on May 1, 2020, plaintiff alleges that corrections officers and property officers at Washington State Penitentiary (WSP), where he was confined at the time, intentionally withheld property that he needed in order to amend his complaint. Dkt. 23. He claims he was denied law library access at WSP and denied access to legal materials with the names of potential defendants. *Id.* He claims Sergeant Adam Kolowinski at WSP deliberately or intentionally withheld his legal documents and confiscated his legal book. *Id.* He claims that property officer Gonzalez at WSP searched his property and threw his evidence in the trash. *Id.* He claims on April 29, 2020, classification officer James Rogers went through his property with property officer Gonzalez and decided which property plaintiff could keep and which would be disposed of. *Id.* Plaintiff also claims "they" confiscated his 5 "legal CDs." *Id.* He claims defendant Holbrook refused to do anything about his property. *Id.*

As relief he asks for an injunction against defendants directing that he be given access to his 5 CDs and any legal property for litigation purposes. *Id.*

REPORT AND RECOMMENDATION - 2

Defendants oppose plaintiff's motion arguing that plaintiff fails to meet the standard for a temporary restraining order or preliminary injunction. Dkt. 38.

## DISCUSSION

The basic function of preliminary injunctive relief is to preserve the status quo ante litem pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). The standards for issuing temporary restraining orders are "substantially identical" to the standards for issuing preliminary injunctions. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Prospective relief here is governed by the Prison Litigation Reform Act (PLRA) which provides:

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A); *see Gomez v. Vernon,* 255 F.3d 1118, 1129 (9th Cir. 2001).

Preliminary relief is granted sparingly, only in clear cases. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). Internal security and safety of jails is a matter that is typically left to the jail administrators, allowing an even more deferential standard. *See Lewis v. Casey*, 518 U.S. 343, 361 (1996); *Turner v. Safley,* 482 U.S. 78, 85 (1987). State prison administration is a "task that has been committed to the responsibility of [executive and legislative] branches and separation of powers concerns counsels a policy of judicial restraint.  Where a state penal system is involved federal courts have ... additional reason to accord deference to the appropriate prison authorities." *Id.*, 482 U.S. at 85.

Parties seeking injunctive relief must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm without preliminary relief, that the balance of

REPORT AND RECOMMENDATION - 3

1  equities tips in their favor, and that an injunction is in the public interest. *Winter v. Natural Res.*
2  *Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has set forth a "serious questions"
3  variation of this standard, under which "a preliminary injunction is proper if there are serious
4  questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the
5  balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public
6  interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

7  Preliminary injunctive relief is "'an extraordinary and drastic remedy, one that should not
8  be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez*, 680
9  F.3d at 1072 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). This is an
10 "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is
11 entitled to such relief." *Winter*, 555 U.S. at 22. Moreover, plaintiff must show more than a mere
12 "possibility" of irreparable harm, but instead must "demonstrate that irreparable injury is likely
13 in the absence of an injunction." *Id*. (emphasis and citations omitted). To fulfill the "irreparable
14 harm" requirement, the moving party "must do more than merely allege imminent harm," but
15 "must demonstrate immediate threatened injury[.]" *Associated Gen. Contractors of California,*
16 *Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

17 In a civil rights case, injunctions must be granted sparingly and only in a clear and plain
18 case. When a plaintiff seeks to enjoin the activity of a government agency, his case must contend
19 with "the well-established rule that the government has traditionally been granted the widest
20 latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378, 96 S.Ct.
21 598 (1976) (citations omitted). This holding applies even more strongly in cases involving the
22 administration of state prisons. *Turner v. Safley*, 482 U.S. 78, 85, 107 S.Ct. 2254 (1987).

23

Here plaintiff has not shown a likelihood of irreparable harm in the absence of injunctive relief. The Court first notes that plaintiff's specific allegations regarding alleged withholding and destruction of his legal property are made against three employees at WSP, Sergeant Kolowinski, property officer Gonzalez, and classification officer John Rogers. But shortly after filing the instant motion and his proposed complaint in this action, plaintiff was transferred to SCCC. In opposition to plaintiff's motion, defendants submit evidence from Jonathan Barr, classification counselor at SCCC, as well as relevant portions of the SCCC legal access handbook, and copies of plaintiff's grievances related to his 5 "legal" CDs. Dkts. 38, 39, 40.

According to Mr. Barr's declaration, two boxes of plaintiff's property, including what appeared to be legal property, were transferred from WSP to SCCC on June 15, 2020. Dkt. 38. He further indicates that plaintiff is housed in the Intensive Management Unit (IMU) at SCCC and that, "[i]ndividuals housed in the Intensive Management Unit (IMU) require a heightened degree of security and supervision […] [and] [a]s a result, there are different processes surrounding legal access in the SCCC IMU." *Id.* Defendants also attach the relevant portion of the legal access handbook which provides that access to the Law Library for prisoners in restrictive housing, is on a closed-circuit computer system/database accessible through the day rooms. *Id.* An individual who is eligible for law library access and has submitted a kite request for the week can access the law library by asking for time to do so from the officers at the beginning of a shift. *Id.* The law library has law books and reference publications available on the computer database. *Id.* Under the policy, plaintiff is also provided access to his own legal property necessary to litigate his case if he has a verifiable court deadline within 45 days. *Id.*

Mr. Barr states that, according to a daily report showing all activity at plaintiff's cell front from May 13, 2020 to September 3, 2020, there are only two events related to the law library: 1)

REPORT AND RECOMMENDATION - 5

1  May 27, 2020, when plaintiff refused to go to the law library and 2) June 9, 2020, when plaintiff

2  went to the law library. *Id.* With respect to the 5 CDs plaintiff seeks to access, defendants'

3  evidence shows that, although DOC staff found the CDs did not comply with the DOC's mail

4  and legal access policies, plaintiff was previously allowed six hours to view the content of the

5  CDs and was told to request paper copies from his attorney if needed, and plaintiff also appears

6  to have been allowed to keep the CDs in his property. Dkt. 40. Further, Mr. Barr states that he

7  would allow an individual who requests to view CDs to have a chance to review such material,

8  but plaintiff has never brought up anything about CDs to his counselor. Dkt. 39. Plaintiff did not

9  file a reply or otherwise dispute the evidence submitted by defendants in opposition to his

10 motion.

11      Defendants have presented evidence that plaintiff has access to law library materials and

12 that he has had the opportunity to view his own "legal" CDs and would be provided that

13 opportunity again at SCCC if he requested it. Furthermore, defendants' evidence shows that

14 additional access to legal materials is available if plaintiff has a verifiable court deadline within

15 45 days. Plaintiff does not dispute this evidence and fails to demonstrate how or why the access

16 he is currently provided at SCCC is insufficient to allow him to prosecute his case. In order to

17 demonstrate a likelihood of irreparable harm, plaintiff must show real and immediate threat of

18 future injury and past injury is largely irrelevant. *See O'Shea v. Littleton*, 414 U.S. 488, 496

19 (1974); *Rizzo*, 423 U.S. at 372; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). On this

20 record, plaintiff has not shown a likelihood of irreparable harm in the absence of injunctive

21 relief.

22      Plaintiff also offers insufficient evidence or argument in support of his motion to

23 demonstrate a likelihood of success on the merits in the underlying action. Plaintiff's complaint

REPORT AND RECOMMENDATION - 6

has just been served and the Court cannot conclude at this point based solely on the allegations of his complaint and this motion that he is likely to succeed on the merits or even that there is a serious question going to the merits.

Finally, plaintiff fails to demonstrate the balance of the equities and public interest weigh in his favor under the circumstances here. The record shows that plaintiff is being provided access to law library materials at SCCC and would be provided the ability to view his legal CDs if properly requested. Defendants present evidence that the IMU has protocols in place for different types of legal access based on the security and safety concerns presented by the population in that unit. Plaintiff has failed to demonstrate how, specifically, those protocols are inadequate or what, if any, specific legal material he requires in order to prosecute his case that he is unable to access under these protocols.

Accordingly, as plaintiff has failed to meet his burden on this motion, the Court recommends that the motion (Dkt. 23) be denied without prejudice.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 15, 2020.** The Clerk should note the matter for **October 16, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due.

REPORT AND RECOMMENDATION - 7

Objections and responses **shall not exceed five (5) pages**. The failure to timely object may affect the right to appeal.

DATED this 1st day of October, 2020.

                                                  BRIAN A. TSUCHIDA  
                                                  Chief United States Magistrate Judge