UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOE JW ROBERTS, JR., <br><br> Plaintiff, <br><br> v. <br><br> TIM THRASHER, *et al.*, <br><br> Defendants. | CASE NO. C20-0376-RSM-BAT <br><br> ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

## I.   INTRODUCTION

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable Brian A. Tsuchida, United States Magistrate Judge. Dkt. #36. The R&R recommends denial of Plaintiff Joe JW Roberts, Jr.'s Motion for Temporary Restraining Order, Dkt. #27. Having considered the R&R, Plaintiff's Objections, Dkt. #37, the Government's Response, Dkt. #41, and the remainder of the record, the Court ADOPTS the R&R and DENIES Plaintiff's motion.

## II.   BACKGROUND

The Court adopts and incorporates by reference the factual background set forth in the R&R. Dkt. #36 at 2-3. Plaintiff Joe JW Roberts, Jr., proceeding pro se and *in forma pauperis*, was confined at Stafford Creek Corrections Center ("SCCC") and recently moved to the Monroe

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DENYING
MOTION FOR TEMPORARY RESTRAINING
ORDER - 1

1  Correctional Complex ("MCC"). *See* Dkt. #45. Plaintiff brought this 42 U.S.C. § 1983 civil rights
2  complaint against 29 employees of the Washington Department of Corrections ("DOC"), including
3  staff at the MCC, the Washington State Penitentiary ("WSP"), and ten unnamed male and female
4  nurses. Dkt. #21. On September 2, 2020, this Court dismissed several of Plaintiff's claims as
5  duplicative of the claims raised in his other pending actions. Dkt. #28. The remaining claims
6  allege events spanning the period 2017 to 2020 against the DOC Housing Coordinator Director,
7  Tim Thrasher, DOC Director of Mental Health, Karie Rainer, and DOC Prisons Command
8  Director, Scott Russell.

9  Plaintiff's motion states that he was approved by Defendant Rainer to receive mental health
10 treatment in the Residential Treatment Unit ("RTU") after signing a contract dated May 19, 2020.
11 Dkt. #27. Pursuant to this contract, Plaintiff argues, Defendant Rainer agreed to place him in the
12 RTU if he completed sixty days of treatment in the Intensive Management Unit ("IMU"). Plaintiff
13 states that despite completing his sixty days in the IMU and Defendant Rainer approving him for
14 placement in the RTU on July 14, 2020, he has not yet been transferred. *Id.* As a result, he has
15 been in solitary confinement for approximately 1,092 days and only allowed outside his cell twice
16 a week for a total of five hours. Plaintiff alleges that his current conditions exacerbate his mental
17 illness, have induced bleeding ulcers from stress, and have precluded him from receiving adequate
18 mental health treatment. For these reasons, he requests "an injunction against defendants Rainer
19 and Thrasher" that orders his immediate transport to the RTU for his approved mental health
20 treatment. *Id.* at 4.

21  On September 10, 2020, Judge Tsuchida issued an R&R finding that Plaintiff failed to
22 meet the standard for prospective relief as set forth under the Prison Litigation Reform Act. Dkt.
23 #36 at 4-8 (citing 18 U.S.C. § 3626(a)(1)(A)). Parties seeking injunctive relief must show that

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DENYING
MOTION FOR TEMPORARY RESTRAINING
ORDER - 2

they are likely to succeed on the merits, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, the R&R concluded that Plaintiff failed to demonstrate likelihood of success on the merits or likelihood of irreparable harm. *See* Dkt. #36 at 6-8. Specifically, the R&R found that Plaintiff's assertions in his complaint and motion regarding his worsening mental health symptoms and concerns about self-harm were "largely conclusory" and lacked specific facts as to the conditions of confinement at SCCC, his location at the time of filing his motion for prospective relief, and whether such conditions are inadequate to keep him safe or place him "at risk of real and immediate harm." *Id.* at 6. Furthermore, because Defendants presented evidence that Plaintiff's request for transfer to RTU at the MCC–Special Offender Unit was being processed, the R&R concluded "it appears plaintiff will receive the relief he is requesting through the DOC administrative process without intervention by the Court." *Id.* at 7. The record reflects that as of the date of this order, Defendant has already been transferred to the MCC. Dkt. #45.

### III.   DISCUSSION

**A. Legal Standard**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Plaintiff's Objections, which vastly exceed the five-page length set forth in the R&R, object to the R&R on the basis that (1) he has proof that his current conditions exacerbate his mental illness and place him at risk of irreparable harm; (2) transfer to the MCC–Special Offender Unit in an Intensive Treatment Unit ("ITU") is not the same as transfer to an RTU, and will not remedy his mental illness; and (3) Defendants have no reason to keep him at maximum custody level. Dkt. #37. The Court will address each objection in turn.

Plaintiff attaches several documents to his Objections as proof that defendants "continue to falsify documentation and lie and continue to punish" Plaintiff, thereby exacerbating his mental illness. Dkt. #37 at 15. These documents include (a) kite communications between Plaintiff and prison personnel inquiring as to his transfer to the MCC upon completion of the 60-day treatment; (b) grievances submitted by Plaintiff between April 2020 and May 2020 alleging use of force and falsification of medical records, including appeals of his earlier grievances; (c) emergency complaints that Plaintiff submitted to health services from August 2019 through April 2020; (d) a primary encounter report detailing Plaintiff's mental health diagnoses; and (e) custody review documents. *See id.* at 19-48. These documents, which reference incidents occurring between fall 2019 and spring 2020, fail to demonstrate Plaintiff's current risk of irreparable harm. Indeed, the April 4, 2020 self-harm incident that Plaintiff describes in his Objections occurred at the WSP, where Plaintiff is no longer housed. *Id.* at 9. Furthermore, in finding that Plaintiff failed to demonstrate likelihood of irreparable harm, the R&R also considered that Defendants had initiated his transfer process to the RTU at the MCC. *See id.* at 7 ("The fact that the transfer process is not moving as quickly as plaintiff would like is not an adequate basis, without more, for granting injunctive relief.") Consistent with this assessment, Plaintiff has since been

transferred to the MCC. *See* Dkt. #45. For these reasons, the Court finds that Plaintiff's claims that he faces immediate and irreparable harm are not sufficiently supported by the record.

Next, Plaintiff objects that his approved transfer to the MCC–Special Offender Unit ("SOU") is not a transfer to an RTU due to his current custody classification. *See* Dkt. #37 at 1-2 ("[F]or Max custody inmates such as myself who go to SOU at MCC. The Max custody inmates go to a mental health treatment facility called the Intensive Treatment Unit "ITU" at the SOU-MCC, NOT RTU."). Although Plaintiff directs the Court to DOC Policy 630.500 to explain the difference between an RTU and an ITU, the policy merely describes the three facilities, including the MCC, that offer residential treatment for offenders with significant mental health disorders. *See* DOC Policy 630.500(IV)(B).[1] The Government, in response, maintains that the Special Offender Unit of the MCC *is* an RTU. Dkt. #41 at 2 (citing Dkt. #35 at ¶ 7 ("DOC has two mental health residential treatment units (RTUs) for male offenders; one is the Special Offender Unit [SOU] at the Monroe Correctional Complex [MCC] and one is located in the Baker-Adams-Rainier Units at the Washington State Penitentiary [WSP].")). The Government also clarifies that at the MCC, residential treatment is provided at the Special Offender Unit. *See* Dkt. #35 at ¶ 7. For these reasons, the Court finds Plaintiff's objection unsupported by the record.

Relatedly, Plaintiff objects to his custody classification level and argues that irreparable harm will not be prevented unless his custody level is changed. *See* Dkt. #37 at 12 ("Defendants have no reason to keep me on max and continue this prolonged torture of isolation"). As an initial matter, Plaintiff's motion makes no mention of lowering his custody level. *See* Dkt. #27 at 4

---

[1] Pursuant to Fed. R. Evid. 201(c)(1), the Court takes judicial notice *sua sponte* of DOC Policy 630.500, available on DOC's website. *See Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *3 (N.D. Cal. Jan. 7, 2014) (taking judicial notice of documents available through government agency websites).

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DENYING
MOTION FOR TEMPORARY RESTRAINING
ORDER - 5

(Requesting immediate order for transport to RTU at MCC and provision of approved mental health treatment). Moreover, to the extent Plaintiff now requests changes to his custody level, his assertions that Defendants "have no reason to keep [him] on max" are conclusory and unsupported by the record. Furthermore, the Supreme Court has acknowledged the Government's discretion to determine the best placement for individuals within its custody. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 227 (1976) ("[T]ransfer [between prisons] in a wide variety of circumstances is vested in prison officials . . . ."); *Hewitt v. Helms*, 459 U.S. 460, 467 (1982), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 ("[P]rison officials have broad administrative and discretionary authority over the institutions they manage"). In light of this broad authority, the Court cannot conclude that granting this requested relief based on the current record would favor the public interest.

## IV.   CONCLUSION

Having reviewed the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge, Plaintiff's Objections, the Government's Response, and the remaining record, the Court finds and ORDERS:

(1)   The Court ADOPTS the Report and Recommendation, Dkt. #36.

(2)   Plaintiff's Motion for Temporary Restraining Order, Dkt. #27, is DENIED without prejudice.

(3)   The Clerk is directed to send copies of this Order to the parties and to Judge Tsuchida.

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DENYING
MOTION FOR TEMPORARY RESTRAINING
ORDER - 6

Dated this 14th day of October, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE